IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA/ALEXANDRIA

FILED

FEB 26 2014

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

Alexander Otis Matthews
plaintiff

v.                        Case No. 14CV206 LO/TRJ

FILED
MAILROOM

FEB 12 2014

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

Estrategia Investimentos,S.A. et al
defendants

Complaint

1. Alexander Otis Matthews,plaintiff, hereby swears to his statements herein under penalty of perjury, pursuant to 28 USC 1746.

2. The plaintiff brings this suit in his personal capacity as President and CEO of American Investments Real Estate Corporation, a corporation that was in good standing during the time period of the events this complaint is based on.

3. The events in this suit occurred between 6/1/2010 and 11/15/2010 in the state of Virginia.

4. At the time of this suit defendant Bruce H. Haglund was a licensed and practicing attorney in the state of California with the firm Wilson, Haglund, and Paulsen.

5. Defendant Wilson,Haglund, and Paulsen is a law firm located in Irvine, California.

6. Metropolitan Bancorp Ltd is a New Zealand based financial services firm with a US branch in Lawton,OK, and San Jose, CA.

7. Estrategia Investimentos is a Brazilian bank with a US branch located in Miami,FL.

Jurisdiction

8. This court has jurisdiction to hear this complaint pursuant to 28 USC 1332.

FACTS

9. American Investments Real Estate Corporation was a corporation in good standing in Virginia that was in the business of utilizing the services of licensed and registered securities brokers and firms to option and resell investment grade bonds.

10. AIREC worked with a securities house based in Zurich called Consirus AG who was in the business of brokering the sale of discounted bank bonds that were listed on various European stock exchanges.

11. For a call option fee, Consirus AG would reserve the bond for a customer, who would then have a specified period to either buy the bond outright or resell the bond to a third party buyer.

12. These bonds were all verified through the European Financial network known as Clearstream, or through EuroClear. The bonds were also listed and verified through Bloomberg,LLP, the bonds being verified by their ISIN and CUSIP numbers.

13. In the summer of 2010 AIREC paid a monthly call option fee to Consirus AG for a Bank of America bond, ISIN No. US638585AN94. AIREC's call option allowed it purchase Bank of America bond at a price of US 88M per US 100M, with the bond at that time with a Bloomberg value at US 114M to US 116M.

14. AIREC sought to sell the bond to a hedge fund or insurance company who would be attracted to the bond's price and 7.5% coupon.

15. AIREC sought to find a partner with extensive financial and banking contacts to assist it in finding a buyer for the bond,and was able to enter into a partnership agreement with Green Energy Capital Corporation, an Alabama company run by a Mr. Terry Hester and located at 6767 Taylor Circle, Montgomery, Alabama, 36117.

16. AIREC and Green Energy Capital Corp (Green Energy) memorialized their partnership, with AIREC's equity being the call option agreement and its monthly payment, and Green Energy's equity being the money necessary to facillitate the purchase and resell of the bond itself.

17. Bank bonds are sent via SWIFT, the international messaging and delivery system susbcribed to by major banks around the world. Bank bonds do not require actual payment up front to be delivered, but rather are delivered pursuant to bank to bank SWIFT guaranties, which enables the receiving bank to receive and fully verify the bond before the payment is released. SWIFT is an honor system between banks which banks take serious care not to dishonor, because its very difficult to transact internationally without utilizing SWIFT mechanisms. While there are other procedures to deliver financial instruments, SWIFT is the preferred method in Europe and Asia due to its reliability and safety.

18. Terry Hester, Green Energy's president, was in fact able to find several buyers for the Bank of America bond, and set up accounts for Green Energy and AIREC at Merrill Lynch to receive the bond, whereupon Merrill Lynch's fixed income securities desk agreed to broker the sale after properly verifying the bond and authenticating the bond within 3 international banking days of its receipt to Merrill Lynch.

19. To provide proper bank to bank guarantee for Consirus AG to deliver the bond to Merrill Lynch, AIREC and Green Energy utilized brazilian bank Estrategia Investimentos (Estrategia), who was a SWIFT member, to send a SWIFT payment guarantee on behalf of AIREC, to Consirus' bank Magyarorszagi Volksbank ZRT (Volksbank), a Hungarian based European commercial bank.

20. To conduct the transaction professionally and under a lawyer's guidance, AIREC and Energy hired defendant attorney Bruce H. Haglund and the law firm of Wilson, Haglund, and Paulsen to conduct the transaction and to act as the escrow agent for the US 150,000.00 fee being charged by Estrategia to send the SWIFT guarantee on behalf of AIREC.

21. Mr. AJ Berrones and Goldie Dickey of Metropolitan Bancorp Ltd act as Estrategia's local representative in the Escrow Agreement with Green Capital that is put together by escrow agent Bruce Haglund and his law firm Wilson,Haglund, and Paulsen. Acting Estrategia,AJ Berrones represents that a SWIFT MT 199 payment guarantee will be sent on behalf of AIREC to cause the delivery of Bank of America bond with ISIN No. US638585AN94 to Volksbank before October 22,2010. If the SWIFT MT 199 is not delivered by October 22, 2010, the contract says that the US 150 k shall be returned to Green Energy.

-2-

22. The partnership agreement between AIREC and Green Energy called for the parties to split 50/50 the proceeds made when Merrill Lynch sold the bond to one of its parties or to one of the parties Green Energy had found that wanted to purchase the bond.

23. Bonds are sold in tranches, and this particular Bank of America bond was a US 350 million dollar instrument. The first tranche of the bond to be delivered by Consirus AG under its call option with AIREC was a US 100 million dollar tranche. With a US 88 million dollar call option price, and an agreement to sell that tranch at its then Bloomberg ILP trading price of US 114 to US 116 million dollars, AIREC and Green Energy stood to make a minimum profit of US 13 million dollars each,not taking into consideration its fees and commissions to Merrill Lynch for conducting the sale.

24. The escrow agreement with Bruce Haglund and AJ Berrones on behalf of Estrategia is shown here as Appendix A, which includes a copy of the SWIFT MT 199 contract/ agreement whereby Estrategia agreed to send that SWIFT MT 199 as a bank payment guarantee to Volksbank of behalf of AIREC before October 22,2010.

25. On 10/21/2010, AJ Berrones sends AIREC and Green Energy an email confirmation shown as Appendix B, which is an email transmittal confirmation confirming the transaction has been sent on behalf of AIREC. What Estrategia and AJ Berrones omitted telling AIREC and Green Energy was that while Estrategia sent the initiating SWIFT wire, its RMA or correspondent bank never forwarded the SWIFT to its final destination at Volksbank. Estrategia and Metropolitan Bancorp Ltd thus breached the contract that they had been paid US 150,000.00 to effect, and the confirmation information which Bruce Haglund and his law firm were supposed to confirm before releasing said 150k as the fee to Estrategia and Metropolitan Bancorp was never properly and definitively confirmed.

26. Banks prefer to deal with banks that they have previous relationships with, and when international wires are sent from one bank to another one it doesn't have a prior relationship with, the bank will use a RMA or corresponding back it already knows to deliver the wire to its final destination.

27. In this case Estrategia had no prior relationship with Volksbank, but it did have a prior relationship with Centrum Bank of Zurich. Centrum Bank had a prior relationship with Volksbank,and agreed to be the relay bank for the wire to Volksbank from Estrategia.

28. Under the terms of its SWIFT MT 199 contract with AIREC,and its contract with Green Energy, Estrategia was responsible for delivering the SWIFT MT 199 to Volksbank, not for delivering it only half of the way to Centrum Bank.

29. Under the terms of its escrow agreement with Green Energy, both Estrategia and Bruce Haglund broached that contract when they released the escrowed funds and paid themselves before fully confirming that the SWIFT MT 199 had been delivered to Volksbank.

30. Estrategia and Bruce Haglund vehimently insisted and represented to AIREC and to Green Energy that Volksbank had recieved the SWIFT, when AIREC and Green Energy were clearly told by Consirus AG that the SWIFT never hit Volksbank.

31. After almost 30 days of accusations back and forth, AIREC finally convinced Estrategia to contact its SWIFT representative and request that he or she trace the SWIFT to find its location. Those discussions to trace the SWIFT are shown as Appendix C.

32. Appendix D is a SWIFT transmittal dated 11/15/2010, and shows that AIREC had been correct in telling Estrategia that the wire never reached Volksbank, because Appendix D shows the wire to Volksbank only being relayed by Centrum Bank on 11/15/2010,more than 3 weeks after Estrategia confirmed that the SWIFT had reached Volskbank. By this time, due to the delays and the false representations by Estrategia and Metropolitan Bancorp Ltd, Consirus had cancelled the transaction on AIREC for non - performance and delays. AIREC thus lost the money it had been paying as a call option fee to reserve the bond for the prior six months,as well as its portion of the profits to be made on the sale,which was US 13 million.

33. Attorney and Escrow Agent Bruce Haglund was grossly negligent and failed in his duties under the Escrow Agreement itself when he falsely confirmed receipt of the SWIFT MT 199 by Volksbank on AIREC's behalf, and when he further released funds to pay for the transaction based on that false confirmation. In an unrelated transaction, the SEC permanently barred Mr. Haglund from ever serving as a director or officer of a public company, disgorged Mr. Haglund of $6,744,083.49, and issued an injunction against Mr. Haglund for his multiple, concurrent,and egregious violation of US securities laws where he similarly served as an escrow agent for a Prime Bank Investment Scheme in the state of California. see Securities and Exchange Commission v. Frances E. Wilde,et al, US Dist LEXIS 183252 (9th Cir 2012). Defendant Haglund broke the Escrow Agreement and caused the transaction to be cancelled on AIREC when he falsely represented that Volksbank was in receipt of the SWIFT MT 199 sent by Estrategia on behalf of AIREC.

34. Estrategia and Metropolitan Bancorp broke their agreement with AIREC contained in the language of the SWIFT MT 199 message sent by them on 10/21/2010. AIREC and defendants Estrategia and Metropolitan Bancorp Ltd agreed to the language after three weeks of revision and amendments,the exact wording of such a SWIFT critical to this   deal and representing clear and definite obligations by all the parties contained in the SWIFT message, which forms a contract thereunder for all parties . Estrategia and Metropolitan Bancorp only agreed to send the SWIFT MT 199 payment guarantee of behalf of AIREC after a vigorous period of due diligence using their status as a bank to confirm the value of the bond and AIREC's efforts in optioning it at its   discounted price. They had further security in knowing that the bond was being delivered to Merrill Lynch, whose fixed income desk has the status and capability to handle the sale of such a bond. They then had miminal risk,and had no basis upon which to seize their payments without fully verifying that they had delivered on their obligations under the SWIFT agreement and the escrow agreement.

35. Wilson, Haglund, and Paulsen failed as escrow agent under the same basis as Bruce Haglund where they released the escrow money as payment without fully verifying that the SWIFT MT 199 was received by Volksbank on behalf of AIREC.

Theories of Recovery

36. The plaintiff hereby charges all four named defendants with breach of contract, unjust enrichment, unfair and deceptive trade practices, promissory estoppel, and breach of the implied covenant of good faith and fair dealing. Defendant Bruce Haglund is also charged with professional malpractice.

Relief

For relief the plaintiff requests compensatory damages from all four named defendants jointly and severally in the amount of US 13 million dollars.

Respectfully,

Dated:2/4/14



Alexander Otis Matthews
24394-016
Federal Prison Camp
PO BOX 9000
Berlin,NH 03570

RECEIVED

FEB 2 1 2014

CLERK, U.S. DISTRICT COURT
RICHMOND, VA



FEB 2 1 2014

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

## PARTIES

Plaintiff(s)

1. Alexander Otis Matthews -24394-016, Berlin Federal Prison Camp, PO BOX 9000, Berlin, NH 03570

Defendant(s)

1. Estrategia Investimentos, S.A. - 2828 Coral Way, Suite 309, Miami,Florida, 33145

2. Bruce H. Haglund - 9110 Irvine Center Drive,Irvine CA 92618

3. Wilson,Haglund, & Paulsen - 9110 Irvine Center Drive, Irvine CA 92618

4. Metropolitan Bancorp, Ltd - 502 NW Sheridan Road,Suite 6A, Lawton,Oklahoma,73505

Appendix A

# FAX COVER SHEET

| | |
|---|---|
| **TO** | alex |
| **COMPANY** | |
| **FAX NUMBER** | 17036452317 |
| **FROM** | Alexander Matthews |
| **DATE** | 2011-05-21 15:56:49 GMT |
| **RE** | |

## COVER MESSAGE

## ESCROW AGREEMENT

**THIS ESCROW AGREEMENT** (this "Escrow Agreement") is entered into as of the 18th day of October, 2010 by and among GREEN ENERGY CAPITAL CORP., 6767 Taylor Circle, Montgomery, Alabama 36117 ("GE") and A.J. BERRONES AND ASSOCIATES, LLC, 1411 Davenport Drive, Merced, California 95340 ("AJB"), and BRUCE H. HAGLUND, ESQ., Wilson, Haglund & Paulsen, 9110 Irvine Center Drive, Irvine, California 92618 (the "Escrow Agent"), in connection with services (the "Services") to be provided by the Escrow Agent on behalf of GE and AJB.

The terms and conditions of this Escrow Agreement are as follows:

1.      **Consideration.** The parties hereto acknowledge the receipt and the sufficiency of the consideration for entering into this Escrow Agreement.

2.      **Letter Agreement.** GE and AJB are parties to that certain letter agreement dated October 11, 2010, a copy of which is attached hereto as Exhibit "A" and incorporated herein by this reference (the "Letter Agreement").

3.      **Deposit into Escrow.** GE arranged for the deposit of $150,000 (the "Escrowed Funds") into the Wilson, Haglund & Paulsen Trust Account B, identified as follows (the "Trust Account"):

Bank Name: Wells Fargo Bank, N.A.

Bank Address: 4850 Barranca Parkway, Irvine, California 92604

Account Name: Wilson, Haglund & Paulsen Trust Account B

Account Number: 199 234 2301

ABA Routing Number: 121 000 248

SWIFT Code: WFBIUS6S

The parties hereto agree that all or a portion of the Escrowed Funds may be transferred to the Bruce H. Haglund Attorney Escrow Account, Metropolitan Bancorp Limited ("MBL"), account #116 012 0513, c/o Bank of America, 1311 N.W. Sheridan Road, Lawton, Oklahoma 73505 (the "MBL Escrow Account"), an account maintained and controlled solely by the Escrow Agent for transactions involving AJB, prior to the release of Escrowed Funds as contemplated by the provisions of Section 4 below. Any Escrowed Funds transferred to the MLB Escrow Account shall be included in the

File No. 590498

definition of Escrowed Funds and shall be administered by the Escrow Agent in accordance with the terms of this Escrow Agreement as part of the Escrow Funds.

**4.    Release of Escrowed Funds.**

4.1    Upon receipt by the Escrow Agent from an officer of MBL, who is acknowleged by the parties to be a duly authorized agent and representative of Estrategia Investimentos S.A. ("EST"), confirming the transmission by EST of a Swift MT199 message containing the verbiage set forth in Exhibit "B" (the "Swift MT199") to MAGYARORSZAGI VOLKSBANK ZRT ("MVB"), the Escrow Agent shall immediately deliver via e-mail a copy of the transmitted Swift MT199 to GE and AJB.

4.2    Before the Swift MT 199 is sent out a copy of MT 199 will be sent to GE for approval by GE and only after the approval of verbiage by GE in email or letter will the Swift MT 199 be sent out. After transmitting the copy of the approved Swift MT 199 that has been sent to GE and AJB, the Escrow Agent shall release $150,000 of the Escrowed Funds in accordance with the instructions of AJB. It is understood by the parties that Exhibit "A" includes a copy of the approved verbiage of a Swift MT199 message from EST to MVB refereed to as Exhibit "B. "

4.3    If confirmation of delivery as described in Section 4.1 above has not been received by the parties by 2:00 PM Pacific Daylight Time on or before October 22, 2010 the Escrow Agent shall return the Funds so held in escrow to GE in accordance with the instructions of GE.

**5.    Waiver of Potential Conflicts of Interest.** The parties acknowledge that the Escrow Holder has acted and will continue to act as legal counsel to AJB. The parties agree to waive any potential conflict of interest that may exist as a result of such representation and acknowledge that they have consulted with independent counsel with respect to such potential conflict of interest or have waived such right. In the event of any dispute concerning this Escrow Agreement, the Escrow Holder agrees that it will not act as counsel to AJB in connection with the resolution of such dispute.

**6.    Agreements, Representations, and Warranties of GE and AJB to the Escrow Agent.** In order to induce the Escrow Agent to act pursuant to the terms of this Escrow Agreement, each of GE and AJB agrees, represents, warrants, and acknowledges to the Escrow Agent that:

6.1    The Escrow Agent will be entitled to rely on such notices or certificates in original or facsimile which, in the reasonable opinion of the Escrow Agent, appear to have been signed by one or other signatories hereto without making any further inquiry or inquiring into the sufficiency or correctness thereof.

File No. 590498

6.2    The Escrow Agent is acting as escrow agent only and upon making the delivery of the Escrowed Funds in accordance with the terms of this Escrow Agreement the Escrow Agent shall have no further liability hereunder.

6.3    It is agreed that the duties of the Escrow Agent are only as set forth in this Escrow Agreement as specifically provided, and are purely administrative in nature, and the Escrow Agent shall incur no liability whatsoever to GE or AJB for any action taken or omitted to be taken by the Escrow Agent, except for willful misconduct or gross negligence.

6.4    Each of the parties releases the Escrow Agent from any act accomplished, omitted or to be accomplished by the Escrow Agent in good faith and in the performance of his duties hereunder.

6.5    Each of the parties agrees to indemnify and hold harmless the Escrow Agent from and against all costs, claims, demands, suits, judgments and liabilities of any kind or nature including reasonable legal or attorneys fees incurred in connection with performance by the Escrow Agent of his duties hereunder, except with respect to action or omissions taken or suffered by reason of gross negligence or willful misconduct on the part of the Escrow Agent.

6.6    The terms and conditions of this Escrow Agreement are irrevocable unless changed in writing and signed by GE, AJB, and the Escrow Agent.

6.7    GE acknowledges that the Escrow Agent has not given either GE any legal advice of any kind or nature.

6.8    GE acknowledges that it is not a "accredited investor" as that term is defined in U.S. federal securities laws.

6.9    GE acknowledges that it has performed sufficient due diligence to satisfy it that entering into the Letter Agreement and this Escrow Agreement is in its best interests and that it does not expect or require that AJB or the Escrow Agent perform any services for GE other than as specifically set forth in the Letter Agreement and this Agreement.

7.    **The Escrow Agent's Costs and Fees.** The Escrow Agent acknowledges that no costs or fees shall be payable to the Escrow Agent by GE in connection with this Escrow Agreement; all costs or fees of the Escrow Agent shall be paid by AJB.

8.    Notices. Any notices made between the parties hereto shall be made via either e-mail or facsimile to the e-mail address or facsimile number of a party as set forth below:

File No. 590498

GE's e-mail: terryhester1@gmail.com
GE's facsimile number: ( 334 ) 213 - 0938
GE's telephone number:

AJB's e-mail address: aj@ajbassociates.com
AJB's facsimile number: 800-578-3151
AJB's telephone number: 209-988-2214

The Escrow Agent's e-mail: bhaglund@whp-law.com
The Escrow Agent's facsimile number: 949-266-8426
The Escrow Agent's telephone number: 714-801-3000

Any party may change its e-mail address or facsimile number for purposes of this
section by giving the other party written notice of the new e-mail address and/or
facsimile number in the manner set forth above.

9.    **Severability.** If any provision of this Escrow Agreement shall be
determined to be in any violation of, or contrary to any law, rule or regulation, or is
held to be unenforceable or invalid by any U.S. court of competent jurisdiction or
arbitrator, as applicable, the validity and enforceability of the remaining provisions
shall not be affected thereby. It is agreed by all parties hereto, that in the event any part
of this Escrow Agreement is, in fact, held to be invalid or unenforceable, then the parties

GE's e-mail: terryhester1@gmail.com
GE's facsimile number: ( 334 ) 213 - 0938
GE's telephone number:

AJB's e-mail address: aj@ajbassociates.com
AJB's facsimile number: 800-578-3151
AJB's telephone number: 209-988-2214

The Escrow Agent's e-mail: bhaglund@whp-law.com
The Escrow Agent's facsimile number: 949-266-8426
The Escrow Agent's telephone number: 714-801-3000

Any party may change its e-mail address or facsimile number for purposes of this section by giving the other party written notice of the new e-mail address and/or facsimile number in the manner set forth above.

9. **Severability.** If any provision of this Escrow Agreement shall be determined to be in any violation of, or contrary to any law, rule or regulation, or is held to be unenforceable or invalid by any U.S. court of competent jurisdiction or arbitrator, as applicable, the validity and enforceability of the remaining provisions shall not be affected thereby. It is agreed by all parties hereto, that in the event any part of this Escrow Agreement is, in fact, held to be invalid or unenforceable, then the parties hereto agree to amend this Escrow Agreement in such a manner as to fulfill the escrow holder's requirement to reconstitute the spirit and intent of the invalid or unenforceable provision(s) to make such provision valid and enforceable.

10. **Amendments.** This Escrow Agreement may be amended at any time provided any such amendments or supplements have been agreed to and executed in writing by all parties hereto.

11. **Governing Law.** This Escrow Agreement shall be interpreted according to the laws of the State of California. Any disputes, controversies or claims concerning the Service and/or the performance by either party of the obligations under this Escrow Agreement shall be resolved by binding arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association. The site of the arbitration hearing will be Irvine, California, and the hearing will be conducted before a panel of three neutral arbitrators appointed by the American Arbitration Association. Prior to commencing the arbitration hearing, the parties shall attempt in good faith to resolve any disputes.

12. **Facsimile Copies as Originals.** A fully executed facsimile or electronic copy of this Escrow Agreement and any documents referred to herein shall be accepted

File No. 590498

and treated by the parties as an original document. This Escrow Agreement may be signed or executed in counterparts.

13.     **Entire Agreement.** This Escrow Agreement, together with the related agreements and obligations referred to herein and as created in accordance with the terms hereof, contains the entire agreement between GE, AJB, and the Escrow Agent and supersedes, or integrates into, all prior verbal or written agreements, representations and understandings of the parties hereto. If any terms or conditions of any previous verbal or written understanding or agreement are in conflict with any terms or conditions of this Escrow Agreement, all terms, conditions and agreements as set forth in this Escrow Agreement shall survive, be primary and supersede any previous agreements. No terms or conditions, other than as contained in this Escrow Agreement shall be of any legal force or effect, and shall be null and void forever.

*(The remainder of this page is intentionally blank; the signature page follows.)*

File No. 590498

IN WITNESS WHEREOF, the parties have executed this Escrow Agreement as of October 18, 2010

GREEN ENERGY CAPITAL CORP.

By: _____
Terry Hester, President
Thereunto Duly Authorized

A.J. BERRONES AND ASSOCIATES, LLC

By: _____
A.J. Berrones, Manager,
Thereunto Duly Authorized

_____
BRUCE H. HAGLUND, ESQ.,
Escrow Agent

File No. 590498

IN WITNESS WHEREOF, the parties have executed this Escrow Agreement as of October 18, 2010

**GREEN ENERGY CAPITAL CORP.**

By: _____
    Terry Hester, President
    Thereunto Duly Authorized

**A.J. BERRONES AND ASSOCIATES, LLC**

By: _____
    A.J. Berrones, Manager,
    Thereunto Duly Authorized

_____
BRUCE H. HAGLUND, ESQ.,
Escrow Agent

File No. 590498

## EXHIBIT "A"

### LETTER AGREEMENT

For and in consideration of the agreements of AJ Berrones and Associates, LLC (AJB) hereinafter set forth, Green Energy Capital Corp. (GE) has caused the sum of $150,000.00 to be deposited in trust with Bruce H. Haglund, Esq., Wilson, Haglund & Paulsen, 9110 Irvine Center Drive, Irvine, CA 92618 (Escrow Attorney), to be held in accordance with that certain Escrow Agreement of even date, to which reference is here made.

The Swift MT199 shall be for the purpose of showing funds availability.
AJB agrees to deliver to GE and Escrow Attorney authentication and confirmation of issuance of a previously agreed upon SWIFT MT199 message from Estrategia Investimentos S.A. to MAGYARORSZAGI VOLKSBANK ZRT. ( See Exhibit B ).Such proof shall be in the form of bank confirmed copies of the said message, including all pertinent SWIFT authentication codes, verifying issuance per required verbiage as contained in the attached Exhibit B, on page 2 hereof, which is fully incorporated herein by reference.

Upon presentation of the swift transmission with authentication codes of the Swift MT199 as set forth above, as Exhibit "B" GE, with full corporate authority hereby instructs Escrow Attorney to release to AJB the sum of $150,000.00. The agreed sum shall remain at all times prior to disbursement in the escrow account of the Escrow Attorney and shall be released only in accordance with the terms of the Escrow Agreement for this transaction.

Acknowledged, agreed and accepted this 18th day of October, 2010.

AJ Berrones and Associates, LLC        Green Energy Capital Corp.

By: _____           By: _____

Witness: _____               Witness: _____

File No. 101110AJBADO

EXHIBIT B

TO BE SENT BY SWIFT.
MT. 199

WE,                    ( BANK)   ,UNDER FULL BANKING RESPONSIBILITY, HEREBY
PRESENT OUR IRREVOCABLE, DIVISIBLE, ASSIGNABLE, TRANSFERABLE
BANK PAYMENT GUARANTEE IN FAVOUR OF CONSIRUS AG, ON BEHALF
OF AMERICAN INVESTMENT REAL ESTATE CORPORATION, TO PAY
FOR ONE HUNDRED MILLION U.S. DOLLARS (US$100,000,000) WORTH
OF BANK OF AMERICA BOND WITH ISIN US63858SAN94 AS PER YOUR
TRANSACTION CODE 23-350M - 00, IN THE AMOUNT OF EIGHTY-EIGHT
MILLION U.S. DOLLARS (US$88,000,000) WITHIN THREE
INTERNATIONAL BANKING DAYS OF RECEIPT OF SAID INSTRUMENT, WE
FURTHER CONFIRM THAT THE NECESSARY FUNDS ARE READY AND
AVAILABLE.
WE WILL MAKE PAYMENT BY SWIFT WIRE OR FEDWIRE TRANSFER TO
THE FOLLOWING BANK CO-ORDINATES.

Bank Name : ALTFEIN BANCORP LIMITED
Through : MAGYARORSZAGI VOLKSBANK ZRT
SWIFT Code : MAVOHUHBXXX
Account No. : 11113040101
For further credit : C O N S I R U S AG
Account No. : 11111121180

UPON RECEIPT, VERIFICATION AND AUTHENTICATION OF THE BANK
INSTRUMENT AS DESCRIBED IN THE CORPORATE INVOICE ISSUED
UNDER YOUR TRANSACTION CODE 23 - 350M , 00

OUR PAYMENT GUARANTEE SHALL BE CALLABLE AFTER THREE
INTERNATIONAL BANKING DAYS AFTER CONFIRMED DELIVERY OF
SAID BANK OF AMERICA BOND WITH ISIN US63858SAN94.

File No. 10111OAJBADO

Please deliver the Instrument to the following bank coordinates:

ABA: 026009593

SWIFT-BIC: BOFAUS3N

Bank Name: BANK OF AMERICA N.A.

Bank Address: 100 WEST 33RD STREET, NEW YORK, NY, U.S.A

Account No. 6550113516

Account Name: MERRILL LYNCH

For Further Credit To: GREEN ENERGY CAPITAL CORPORATION

Account number: 871-02495

**BOND TO BE TITLED TO: GREEN ENERGY CAPITAL CORPORATION**

WE HEREBY CONFIRM THAT THE FUNDS ARE GOOD, CLEAN AND CLEARED FUNDS OF NON-CRIMINAL ORIGIN AND FROM LEGAL SOURCE

File No. 101110AJBADO

# Fwd: Please relay this email to GREEN ENERGY CAPITAL

**TERRY HESTER** (terryhester1@gmail.com)    Appendix B

Mon 11/08/10 10:58 PM

To:  Alexander Matthews (alexandermatthews87@hotmail.com)


---------- Forwarded message ----------
From: aj@ajbassociates.com <aj@ajbassociates.com>
Date: Mon, Nov 8, 2010 at 1:15 PM
Subject: Fwd: Please relay this email to GREEN ENERGY CAPITAL
To: Hester Terry <terryhester1@gmail.com>



Sent from my iPhone 4

Begin forwarded message:

> **From:** Goldie Dickey <goldie@metrobancorp.net>
> **Date:** November 8, 2010 11:14:17 AM PST
> **To:** "aj@ajbassociates.com" <aj@ajbassociates.com>, 'Bruce Haglund' <bhaglund@ghp-law.com>, 'Bruce Haglund' <bhaglund@whp-law.com>
> **Cc:** 'jay berrones' <emailjayb@gmail.com>, "cody@metrobancorp.net" <cody@metrobancorp.net>
> **Subject: Please relay this email to GREEN ENERGY CAPITAL**

*Sent via Email ( kindly relay to Green Energy Capital )*



Dear Green Energy Capital:


We Metropolitan Bancorp LTD, an Institutional Representative of Estrategia Investamentos S.A. confirm the MT199 that was sent to Magyarorszagi Volksbank ZRT and was relayed through Centum Bank. A copy of the transmission was provided to you. If there is an issue related to locating the swift MT199 please have the receiving parties Banker email me. It is standard practice that we do not receive any message back from a relaying bank unless there is an issue such as the bank's unwillingness or inability to relay the swift to Volks bank or Volks Bank not accepting the swift.


For your convenience, please see all my contact information(s) below. Thank you.

Sincerely:



## Metropolitan Bancorp
### Your Financial Solution Made Simple

*Goldie Dickey*

*Metropolitan Bancorp Ltd.*

*Level 20, ASB Bank Centre*

*135 Albert Street*

*Auckland, New Zealand 1010*

*Phone: +649 359 7449 Fax: +649 359 7459*

*United States Contact information*

*California Branch:*

*2150 Tradezone Blvd. Suite 108*

*San Jose, California 95131*

*Office 408-748-1832*

*Efax 408-904-7595*

*Mobile 951-990-9509*

*Oklahoma Branch:*

*502 NW Sheridan Road Suite 6A*

*Lawton, Oklahoma 73505*

*Office: 580-355-5800*

*Fax: 580-355-0433*

*Mobile: 951-990-9509*

*Email: goldie@metrobancorp.net*

*Website: www.metrobancorp.net*

DISCLAIMER: This e-mail and any attachments are confidential. They may contain privileged information and are intended for the named addressee(s) only. Unless expressly stated, opinions in this e-mail are those of the individual sender and not of Metropolitan Bancorp LTD. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you are not the intended recipient, please call or e-mail the sender and delete this message and any attachments immediately.

RE:

From: **Ato Sackey** (atosackey@hotmail.com)

Sent: Sat 11/06/10 4:01 AM

To: TERRY HESTER (terryhester1@gmail.com)

Cc: ALEXANDER MATTHEWS (alexandermatthews87@hotmail.com)

Terry,

The world of finance does not work like that. The onbus is on you to prove that a swift was sent. Therefore you MUST get a coipy of the forwarded swift from Centrum bank or Estrategia. No-one, least of all Phililp is going to waste their time and risk exposure by calling other banks with whom he has no relationship. You MUST get a copy of the Centrum swift, period.

Regards,

Ato

---

Date: Fri, 5 Nov 2010 14:56:00 -0500

Subject:

From: terryhester1@gmail.com

To: atosackey@hotmail.com

CC: alexandermatthews87@hotmail.com

Dear Ato:

The swift was sent thru Centrum Bank Zurich to Volksbank it was delivered and confirmed. If Philip wants to speak to the banker at

Estrategia to confirm the swift call him at + 552192452598 DIRECT or email him at a bank certified e mail at SINDHU @ ESTRATEGIA

INVESTIMENTOS.COM. If Philip wants anything else let him call or email and the banker will accomodate.

Bottom Line we are tired of all the bull we want the instruments delivered to Merrill Lynch immediately.

Sincerely,

Terry Hester President

Green Energy Capital Corp.

Meldung O20101115000005, Status '90 zur Ablage'

Appendix D

| | | |
|---|---|---|
| Sender (ISN 0116 010946) | SWIFT LT | CBZHCHZZAXXX |
| Receiver | SWIFT LT | MAVOHUHBXXXX |
| | Priority | N - Normal without delivery monitoring |

:20:Transaction Reference Number
:79:Narrative

Transaction Reference Number    U1039XXX11537415
WE HAVE RECEIVED THE FOLLWING MESSAGE WHICH WE
RELAY WITHOUT OBLIGATION AND AUDIT BY CENTRUM
BANK (SWITZERLAND) AG
QUOTE
FOR ALTOFIN BANCORP LTD,ACC.NO 1111340101 FOR
FURTHER CREDIT TO CONSIRUS AG,ACC.NO-1111121180.
WE,ESTRATEGIA INVESTIMENTOS S.A., RIO DE
JANEIRO,BRAZIL,UNDER FULL BANKING RESPONSIBILITY
HEREBY ISSUE OUR IRREVOCABLE,DIVISIBLE,
ASSIGNABLE, TRANSFERABLE BANK PAYMENT GUARANTEE
IN FVR. OF CONSIRUS AG ON BEHALF OF AMERICAN
INVESTMENT REAL ESTATE CORPORATION AND
METROPOLITAN BANCORP,TO PAY AN
AMOUNT OF EIGHTY-EIGHT MILLION
USDOLLARS FOR ONE HUNDRED MILLION
VALUE OF BOA BOND,ISIN-US838585AN94
UNDER TRANSACTION CODE:23-350M.00.
PAYMENT GUARANTEE IS CALLABLE 3
BANKING DAYS AFTER RECEIPT,
VERIFICATION AND AUTHENTICATION
OF BOND DELIVERED TO BOA, SWIFT-
BOFAUS3N,ACC.NUMBER:6550113516,
ACCT.NAME:MERRILL LYNCH CREDIT TO
GREEN ENERGY CAPITAL CORP.,ACC.NO:
871-02495,BOND TITLED TO GREEN
ENERGY CAPITAL CORP. FUNDS ARE
CLEAN AND CLEAR.
FOR ESTRATEGIA INVESTIMENTOS SA.
ALEXANDRO MARCEL PHELLIPE BBM MARRAN
PIN:M-191 PIN:P-196
ANY QUERY PL REVERT TO COMPLIANCE
ON +552192452598(DIRECT), EMAIL:
SINDHU(AT)ESTRATEGIAINVESTIMENTOS.COM
UNQUOTE