UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA

Alexander Otis Matthews
plaintiff

v.                                    Case No. 1:14-cv-207

Estrategia Investimentos, S.A., et al

Plaintiff's Response To Defendant Centrum
Beratungs und Beteiligungen AG's (Centrum B&B) Motion to Dismiss

    Alexander Otis Matthews, pro se, respectfully files his response pursuant to Local Civil Rule 7(K) to the defendant's motion to dismiss, as follows:

1. In its motion to dismiss the defendant Centrum Beratungs und Beteiligungen AG ( Centrum B&B) contends that the Court does not have jurisdiction over it in this matter, and that under Rule 12(b)(6) the plaintiff has failed to state a claim upon which relief can be granted. The plaintiff shall address each of the defendant's argument in turn.

2. In support of its argument that the Court lacks personal jurisdiction over it in this matter, the defendant cites the requirements needed to establish both general and specific jurisdiction. That is, the defendant holds that the Court lacks specific personal jurisdiction because the defendant Centrum B&B lacks any contacts with Virginia that relate in any way to the subject matter of the lawsuit. The defendant Centrum B&B also holds that the Court has no general personal jurisdiction over it because such broad exercise of jurisdiction is proper only when the foreign defendant can said to be at home.

3. Defendant Centrum B&B has omitted addressing another means of establishing personal juridiction over non-resident defendants which our nation's district courts and the United States Supreme Court have long recognized, and that is pursuant to the stream of commerce legal theorem. Under the stream of commerce theorem, the Supreme Court of the United States has granted courts specific jurisdiction where a "nonresident defendant, <u>acting outside the forum state</u>, places in the stream of commerce a product that ultimately causes harm inside the forum." see <u>Goodyear Dunlop Tires Operations, S.A., v. Brown</u>, 564 U.S. 915, 919 (2010). Under the stream of commerce theorem and its use to establish specific jurisdiction, jurisdiction against a defendant is predicated upon or related to the defendant's specific contacts with the forum state, <u>and</u> instances in which these single or occasional acts occurred <u>or had their impact</u> in the forum state against the plaintiff, thus invoking the benefits and protections of the laws of the forum state. see <u>Hansen v. Denckla</u>, 357 U.S. 235, 253 (1958).

-1-

4. The actions of Centrum B&B in the case at bar constitute a classic case where jurisdiction should vest in a district court under the stream of commerce theorem. That is so because just like a manufacturer that is a nonresident that places a product in the stream of commerce which ultimately causes harm in the forum state, Centrum B&B, despite being a nonresident of the forum state of Virginia, ultimately caused harm to the plaintiff in the forum state from actions related to its banking services involving an international S.W.I.F.T. message transmission. see generally Dayton, Personal Jurisdiction and the Stream of Commerce doctrine, 7 rev. Litigation 239, 262-268 (1988)(discussing origins and evolution of the stream of commerce doctrine). In the case at bar, recognizing the stream of commerce doctrine, the actions and omissions of Centrum B&B clearly fall under this legal theorem, where as a nonresident defendant it did ultimately cause great harm to the plaintiff inside the forum state. Its service or product, being its untimely forwarding of the S.W.I.F.T. message, "travelled through an extensive chain of distribution before reaching the ultimate consumer," in this case the plaintiff. This is precisely the reason that the state of Virginia, and other states, have enacted long-arm statutes, which authorize courts to exercise specific jurisdiction over such nonresident defendants, when that defendant's products or services were used or consumed within the forum state in the ordinary course of trade.

5. To properly consider this matter the interconnected and vast network of global trade and commerce must be looked at. In the case at bar Centrum B&B agreed to be a party to an international S.W.I.F.T. wire that listed both the plaintiff American Investments Real Estate Corporation (AIREC) and Centrum as parties to the MT-199 message. The MT-199 message expressly listed both parties, and since Centrum B&B in its motion has conceded its knowledge of AIREC as a corporation in good standing in the forum state during the transaction, it had knowledge it was transacting with a company in the forum state. In the S.W.I.F.T stream of commerce transaction Centrum played a central role in the matter as a relay or middleman bank that was selected due to its prior banking relationship with the two other banks conducting the transaction. To meet the threshold required to vest jurisdiction in a district court under the stream of commerce theorem an alien defendant must: 1) place its product or service into the stream of commerce, 2) they must know or should have known the likely destination of the product or service, and 3) its conduct and connections with the forum state are such that it may reosonably foresee being hailed into court within that forum. see Deb USA, Inc. v. CWGC LA Inc., US Dist LEXIS 20027 (4th Cir 2017).It is very reasonably argued here that Centrum B&B placed its services into the stream of commerce by agreeing to be the relay bank for the plaintiff under the MT-199 agreement which referenced both Centrum B&B and the plaintiff expressly. Because Centrum B&B had advance notice of the entity that it would be sending the S.W.I.F.T message for, in this case a company based in the forum state and an authorized legal entity in the forum state, Centrum B&B both

knew or reasonably should have known that it services would be utilized in the forum state where AIREC was based out of.Finally, based on the monetary size of the transaction and on the very critical role that S.W.I.F.T transmissions play daily in most international business transactions, it is not unreasonable to assume that Centrum would foresee itself hauled into court in the Forum state should it not perform its duties under the MT-199 contract and more generally under the rules of banks that are members of the S.W.I.F.T network.

6. In many ways the Court's jurisdiction over Centrum B&B in the case at bar is analagous to this Court's jurisdiction over other nonresident defendants in other cases presently before the Court, such as United States v. Dotcom, et al,U.S. Dist LEXIS 148114 (4th Cir 2012). In Dotcom, this Court established jurisdiction over the defendants based only upon the fact that the defendants had sent some of their communications to copyright holders on computer servers located in the Eastern District of Virginia. While the standards for criminal and civil liability and jurisdiction admittedly are distinct, certainly the Dotcom defendants cannot be said to be at home in the forum state of Virginia or that its affiliations are so "continuous and systematic" as to render it essentially at home in the forum state. Yet this Court found this minimal contact sufficient to establish jurisdiction under the indictment, with the much more serious criminal penalties and sanctions involved, and this type of jurisdiction has been estblished by federal courts against many nonresident international companies and individuals. The United States has also found jurisdiction against many nonresident foreign banks who have never transacted in the United States, but have only been alleged to have assisted American persons in subverting the tax laws of the United States and thus faced criminal penalties based on the jurisdiction established.

7. In the case at bar, Centrum B&B's contact with the forum state through a company based in the forum state was clear, its role in the stream of commerce was fundamental and central, and its harm to the plaintiff in the forum state was profound.

8. Looking at the issue from the additional angle of the VA long arm statute and the Due Process Clause of the Fourteenth Amendment, the district courts have decided that a plaintiff need only make a prima facie showing that the nonresident defendant be subject to suit under both the long-arm statute of its forum state and the Due Process Clause. That is, because the district courts have interpreted the VA long-arm statute to reach as far as the U.S. Constitution allows, the statutory and due process components of the personal jurisdiction analysis merge. see ALS Scan, Inc., v. Digital Serv. Consultants, Inc., 293 F.3d 707, 710 (4th Cir 2002). We have already shown that personal jurisdiction in the case at bar cannot be found under the general or specific jurisdiction theorem strictly, but rather must be analyzed under the stream of commerce specific jurisdiction theorem . Under that theorem Centrum B&B acted to

provide its services to a company which was an authorized entity based in the forum state, and it is certainly not therefore offensive to "traditional notions of fair play and justice" that Centrum B&B should, as a major world bank aware of its duties under S.W.I.F.T and a transaction of this dollar amount, find itself liable for its failures to perform its duties in good faith. Because holding Centrum B&B to the jurisdiction of this EDVA/Alexandria Court is not "offensive to traditional notions of fair play and justice", it is not offensive to the Fourteenth Amendment and its Due Process protections (because the Fourteenth Amendment applies only to the States, in the case at bar it would be the 5th Amendment's protections by way of the Fourteenth Amendment as a matter of law).

9. Centrum B&B is not an innocent bystander in the case at bar. As a major world bank with solid standing it knew the stakes involved in a S.W.I.F.T. message involving an $88 million dollar guarantee for an Investment Grade, A rated financial instrument. Centrum B&B reasonably knew the importance of its role in timely forwarding the message and its banking guarantee, and the importance of not acting to delay such a message under the S.W.I.F.T. system. It must be reasonably argued that they would have expected to be legally challenged in the forum state and home of AIREC for their clear and heretofore unexplained role in failing to send that message for almost one month after they received it. Unlike the defendant in De Simone v. VSL Pharms., Inc., where that court couldn't establish jurisdiction because Vivomixx did'nt make the sale in question from its own website, in the case at bar Centrum B&B both directly received the message to its own S.W.I.F.T. terminal in its bank, and also directly sent the message out in an untimely manner. This is the case because for security purposes, all S.W.I.F.T. members (banks) can only send and receive S.W.I.F.T. messages on their own S.W.I.F.T terminals located within their banks. Thus Centrum B&B made a specific and direct effort in a stream of commerce event by transacting with and on behalf of a company based in the forum state, which is further connects Centrum B&B to the forum state because the primary beneficiary of the stream of commerce event is AIREC, a company which Centrum B&B itself acknowledges to be a Virginia company at time of the event. Centrum B&B, by its very act of agreeing to be the relay or middleman bank for the transaction, made a specific and direct effort to deliver its services within the forum state to a company based in that forum state.

10. Because the MT-199 agreement or message was contained within the body of the Escrow Agreement which set the terms of the entire S.W.I.F.T. transaction, and because AIREC was not only a benefactor of that contract but the prime beneficiary itself, under Virginia's 3rd Party Beneficiary Statute AIREC is able to pursue its legal remedies under that contract despite AIREC not being a direct signatory. Because both Centrum B&B are expressly mentioned and cited

-4-

as principal members of the S.W.I.F.T. message, AIREC has an additional legal basis upon which to hold Centrum B&B liable for its failures to carry out its duties under the transaction. Contrary to Centrum B&B's assertion that for the Court to exercise personal jurisdiction over Centrum B&B would haul it into court "solely as a result of random, fortuitous, or attenuated events" is far from the case in the matter at bar...the plaintiff has fully demonstrated in this pleading the degree and manner in which the defendant Centrum B&B knew who it was interacting on behalf of, which forum state it was transacting with, the stakes for its actions in bad faith or violating the rules of S.W.I.F.T as a S.W.I.F.T member, and the very organized ( as opposed to random) nature of the transaction itself and its central role as the relay bank. Centrum B&B is no innocent lamb in this matter; in international banking protocols, or in the S.W.I.F.T protocols...they are a seasoned and savvy world class bank with full awareness of its role when it participates in such international banking processes.

11. The second part of Centrum B&B's motion argues that the plaintiff has failed to state a claim upon which relief can be granted. First of all the district courts have held that banks cannot be held liable for simple negligence claims in regards to S.W.I.F.T. transactions. Also, the statute of limitations for negligence claims in the state of Virginia is two years, thus the negligence claims asserted against Centrum B&B are time barred. see Rossmann v. Lazarus, 2009 US Dist LEXIS 1741( 4th Cir 2009).

12. As to the breach of contract claim, Centrum B&B is listed expressly with AIREC in the MT-199, which the entire Escrow Agreement (a governing contract for the transaction) is premised upon. That Centrum B&B agreed to be party to that contract is belied by its actions in sending the S.W.I.F.T. message, as is the fact that it was a party to the contract - if it was not a party to the contract with AIREC listed as the primary beneficiary of that contract then why did Centrum B&B act to fulfill its duties under the contract, albeit in an untimely manner ? Centrum B&B was a principal with AIREC in the MT-199 and thus the Escrow Agreement itself, and based on its voluntary actions to comply with its duties under the contract it cannot now claim not to have been a party to it, such a stance is in defiance of logic and reason. Centrum B&B is liable to AIREC under the breach of contract claim, its actions belying its assertions to the contrary. Similarly, Centrum is also liable to AIREC under the breach of the implied covenant of good faith and fair dealing claim. Because Centrum B&B's actions show an attempt (but failure) to perform timely under its contractual agreements as a bank acting under its S.W.I.F.T. duties, its actions in the case at bar constitute a clear breach of this Virginia statute, making Centrum B&B liable to AIREC under this claim.

Additionally, because the Escrow Agreement was the contract governing the transaction, because both AIREC and Centrum B&B were expressly listed as principals in the MT-199 Agreement at the center of the Escrow Agreement, and because of the 3rd Party Contract beneficiary rights available to AIREC as the primary beneficiary of the contract, Centrum B&B is precluded from arguing that its actions do not constitute a breach of that contract. Thus, both the breach of contract claim and the related breach of the implied covenant of good faith and fair dealing are valid claims in relation to the set of facts before the Court. That is, the Escrow Agreement and the MT_199 represent a contract between all the listed parties which governed the transaction, Centrum B&B breached the contract when it delayed the transmission beyond the date specified in the Escrow Agreement, and AIREC was injured and suffered damages in having the contract cancelled by the seller of the financial instrument based on delay's caused by Centrum B&B.

13. Finally, Centrum B&B reserved the right to challenge at a later date the plaintiff's standing to represent the interests of AIREC in the case at bar. The plaintiff addresses this by stating that in multiple cases in courts in the Commonwealth of Virginia, Virginia courts have allowed the plaintiff to represent the interests of AIREC and other cancelled entities where the property and affairs were vested in the plaintiff as a matter of law under the Code of VA. In fact, VA law expressly allows the trustee in liquidation to litigate on behalf of the dissolved entities, and nowhere expressly says that the trustee in liquidation must have an attorney to represent him. In Case CL-16-02 in the Arlington County Circuit Court, the plaintiff was allowed to litigate on behalf of a cancelled corporate entity through the case to default judgment, and in Fairfax County Circuit Case CL_2013-11270 the plaintiff was allowed to represent the interests of a cancelled corporate entity for the past 4 years. Of course in these other cases and in the case at bar the plaintiff will either retain counsel or request court appointed counsel if a trial is necessary. But the fact remains that VA law expressly allows a trustee in liquidation to represent a dissolved entity for the purposes of wrapping up the corporation's affairs, and nowhere expressly says otherwise.

14. For the reasons argued herein the plaintiff respectfully asks the court to deny Centrum B&B's motion to dismiss.

WHEREFORE the plaintiff prays for the Court to deny the defendant Centrum B&B's motion to dismiss.

Respectfully,

Date: 10/25/17

Alexander Otis Matthews
24394-016, LSCI Allenwood
PO BOX 1000
White Deer, PA 17887

-6-

-7-

Certificate of Service

Alexander Otis Matthews hereby certifies that a true copy of this document was sent via first class mail, postage prepaid, to the following persons and entities:

1. Charles B. Molster, III- at 2141 Wisconsin Avenue., N.W., Suite M, Washington DC 20007

2. Bruce H. Haglund- at 20 Foxboro, Irvine, CA 92614

3. Wilson, Haglund, & Paulsen- at 20 Foxboro, Irvine, CA 92614

Date: 10/25/17

Alexander Otis Matthews
24394-016
LSCI Allenwood
PO BOX 1000
White Deer, PA 17887